UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KIANE ARCENEAUX                    CIVIL ACTION NO. 6:11-cv-00887

VERSUS                             JUDGE DOHERTY

MICHAEL J. ASTRUE,                 MAGISTRATE JUDGE HANNA
COMMISSIONER OF
SOCIAL SECURITY


## REPORT  AND  RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED IN PART,

REVERSED IN PART, and REMANDED.


### BACKGROUND

On October 30, 2007, the claimant, Kiane Enrice Arceneaux (sometimes

referred to as Kiane Dixon), applied for Supplemental Security Income benefits,

alleging a disability onset date of May 18, 2006.[1]  In a disability report, Ms.

Arceneaux stated that she was working as a shower aide in a nursing home when she

---

[1]        Rec. Doc. 7-1 at 66.

first injured her back in May 2006.[2]  She alleged that, after the initial injury, she reinjured her back in automobile accidents in May and June 2007.[3]  She claims that she stopped working on September 12, 2007 because she was in a lot of pain.[4]  A determination was made that she is not disabled.[5]  Ms. Arceneaux requested a hearing, which was held on January 27, 2009 before Administrative Law Judge ("ALJ") W. Thomas Bundy.[6]  Ms. Arceneaux sought review by the Appeals Council, but on April 29, 2011 the Appeals Council denied her request.[7]  This appeal followed.

Ms. Arceneaux was born on August 2, 1978.[8]  She was 28 years old when she applied for benefits, 31 years old when the hearing was held, and is now 34 years old. She has a ninth grade education plus training at a technical college to become a certified nursing assistant.[9]  She has worked as an apartment complex manager and

---

[2]     Rec. Doc. 7-1 at 87.  Interestingly, Ms. Arceneaux's medical records show that her cervical spine and lumbar spine were x-rayed at Southwest Medical Center in February 2005 — before the claimed injury – and no acute abnormalities were detected.  Rec. Doc. 7-1 at 169.

[3]     Rec. Doc. 7-1 at 86.

[4]     Rec. Doc. 7-1 at 86.

[5]     Rec. Doc. 7-1 at 33.

[6]     The hearing transcript is found in the record at Rec. Doc. 7-1 at 24-31.

[7]     Rec. Doc. 7-1 at 4.

[8]     Rec. Doc. 7-1 at 82.

[9]     Rec. Doc. 7-1 at 92.

as a certified nursing assistant.[10]  At the hearing, she testified that she had not worked since she applied for SSI in October 2007.[11]  She returned to school in January 2009, working toward her GED, with plans to become a nurse.[12]

After the initial accident, Ms. Arceneaux treated with Dr. Ilyas Munshi, a neurological surgeon.  On June 1, 2006,[13] Dr. Munshi reported that Ms. Arceneaux was complaining of excruciating pain, still working light duty but not doing any heavy lifting.

Ms. Arceneaux saw Dr. Luiz C. deAraujo, a neurological surgeon, on June 12, 2006.  He noted that she complained of the sudden onset of neck and lower back pain starting on May 18, 2006 when she was lifting a patient.[14]  An MRI of the cervical spine on June 23, 2006 was negative.[15]  An MRI of the lumbar spine on June 22, 2006 showed a disc bulge and degenerative disc disease at L4-5 as well as a very equivocal

---

[10]     Rec. Doc. 7-1 at 95.

[11]     Rec. Doc. 7-1 at 27.

[12]     Rec. Doc. 7-1 at 27.

[13]     Rec. Doc. 7-1 at 142.

[14]     Rec. Doc. 7-1 at 131.

[15]     Rec. Doc. 7-1 at 134.

abnormality on the right at L5-S1.  On September 25, 2006, Dr. deAraujo discharged Ms. Arceneaux to Dr. Laborde.[16]

Dr. Thomas C. Laborde is a physiatrist whose letterhead explains that he uses treatment procedures to manage pain without surgery.[17]  On October 16, 2006,[18] he reported that Ms. Arceneaux was doing exercises at home, going to physical therapy, and taking Lortab and Vistaril.  She was cleared for light level activity.

On October 3, 2007,[19] Ms. Arceneaux began treating with Dr. John Budden. She complained of low back pain radiating to the left foot with numbness and tingling.  She acknowledged the original injury and also reported a subsequent automobile accident.  She denied that her symptoms were related to the car accident. Dr. Budden ordered a lumbar MRI that showed an extruded disc fragment.[20]  He referred her to Dr. Louis Blanda.[21]

On October 30, 2007, Ms. Arceneaux applied for SSI.[22]

---

[16]     Rec. Doc. 7-1 at 128.

[17]     Rec. Doc. 7-1 at 153.

[18]     Rec. Doc. 7-1 at 153.

[19]     Rec. Doc. 7-1 at 194.

[20]     Rec. Doc. 7-1 at 195-196.

[21]     Rec. Doc. 7-1 at 195.

[22]     Rec. Doc. 7-1 at 66.

On November 1, 2007,[23] Dr. Blanda, an orthopaedic surgeon, reported that Ms. Arceneaux's symptoms began in May 2006 when she was injured at work while lifting a patient.  She went to physical therapy, her symptoms resolved, and she settled her workers' compensation claim with her employer.  Her pain returned in May 2007 when her husband pushed her off a chair and she landed on her buttocks.  Then she was injured in an automobile accident in June 2007 and in another motor vehicle accident in September 2007.  This led her to Dr. Budden, who referred her to Dr. Blanda.

On her first visit with Dr. Blanda, Ms. Arceneaux complained of constant aching low back pain that she rated a nine on a scale of one to ten, radiating pain into her buttocks and legs with numbness in both feet, difficulty sleeping, and urinary frequency.[24]  She also reported neck pain associated with headaches and pain across the top of her shoulders that she claimed began in October 2007.[25]  Dr. Blanda recommended a decompression and diskectomy with pedicle screw fusion and graft at L4-5 and L5-S1.[26]

---

[23]     Rec. Doc. 7-1 at 199-202.

[24]     Rec. Doc. 7-1 at 199.

[25]     Rec. Doc. 7-1 at 200.

[26]     Rec. Doc. 7-1 at 201-202.

On November 27, 2007, a non-examining physician determined that Ms. Arceneaux was capable of performing sedentary work.[27]

Just a few days later, on December 5, 2007, Dr. Blanda performed surgery on Ms. Arceneaux.  The operative report[28] indicates that a possible congenital anomaly with the pedicles prevented an instrumented fusion from being performed.  Instead, Dr. Blanda performed the following procedures:  bilateral decompression at L4-5 with foraminotomies and discectomy on the left; L5-S1 exploration with foraminotomy on the right; bilateral non-instrumented fusion at L4-5 and L5-S1; and preparation of bone graft.

She followed-up with Dr. Blanda on December 20, 2007,[29] December 27, 2007,[30] January 10, 2008,[31] February 21, 2008,[32] and May 29, 2008.[33]  At the May 2008 visit, she reported that she had been involved in a domestic dispute with her

---

[27]     Rec. Doc. 7-1 at 203-210.

[28]     Rec. Doc. 7-1 at 237.

[29]     Rec. Doc. 7-1 at 392.

[30]     Rec. Doc. 7-1 at 390.

[31]     Rec. Doc. 7-1 at 389.

[32]     Rec. Doc. 7-1 at 388.

[33]     Rec. Doc. 7-1 at 386.

husband and been placed in handcuffs for approximately forty-five minutes, resulting in increased low back pain and left leg pain.

On June 26, 2008, Ms. Arceneaux was treated in the emergency room at Medical Center of Southwest Louisiana in Lafayette, Louisiana for back pain.[34] She reported that she had been having backache for the past month, since being involved in an incident in which she was handcuffed.  She was prescribed some medications and advised to follow up with Dr. Blanda.

She saw Dr. Blanda again on July 17, 2008,[35] and on August 14, 2008.[36]  At that time she was having continued back pain.

The hearing before the ALJ was held on January 27, 2009.

Ms. Arceneaux saw Dr. Blanda again on February 27, 2009, following up with regard to her neck and back pain.[37]  She reported occasional neck pain and a bigger problem with SI joint pain on the right, which Dr. Blanda explained as piriformis syndrome.

---

[34]     Rec. Doc. 7-1 at 354-360.

[35]     Rec. Doc. 7-1 at 385.

[36]     Rec. Doc. 7-1 at 384.

[37]     Rec. Doc. 7-1 at 485.

On April 16, 2009, the ALJ rendered his decision, which found that Ms. Arceneaux was disabled from May 18, 2006 through October 13, 2008 but not thereafter.[38]

On that same day, April 16, 2009, Ms. Arceneaux again sought treatment at the emergency room at Medical Center of Southwest Louisiana.[39]  She complained of chronic back pain, which she described as being a nine on a scale of one to ten.  She was given pain medication and advised to follow up with her doctor.

On June 2, 2009, Ms. Arceneaux sought treatment at the emergency room at Medical Center of Southwest Louisiana in Lafayette, Louisiana, reporting that she had been in another motor vehicle accident.[40]  Her complaint was low back pain, which she described as mild.

Ms. Arceneaux also saw Dr. Blanda on that same day, June 2, 2009,[41] following up with regard to chronic back pain.  His report states that Ms. Arceneaux was involved in a motor vehicle accident that day and that she would be seen "on a

---

[38]     Rec. Doc. 7-1 at 20.

[39]     Rec. Doc. 7-1 at 418-424.

[40]     Rec. Doc. 7-1 at 400-404.

[41]     Rec. Doc. 7-1 at 483.

different account at a later date" with regard to that accident but seen "on this account routinely in six months."

On August 31, 2009, Ms. Arceneaux called Dr. Blanda's office and reported that she could not come in "on a new account due to new accident because attorney is not authorizing it yet."

On October 23, 2009, Dr. Blanda noted that he has treated Ms. Arceneaux since October 2007, he performed an L4-5, L5-S1 decompression with pedicle screw fusion on December 4, 2007, she has a 20% permanent physical impairment, and she has light duty restrictions.[42]

According to Dr. Blanda's notes, he last saw Ms. Arceneaux in connection with her original injury and back surgery on December 3, 2009.[43]  On that date, he noted that she was experiencing continued low back pain, with occasional radicular type symptoms in both legs, greater on the left side rather than the right.  He stated that she had tried to return to work as a CNA but had to stop after two weeks because of back pain.  Still, he stated that "[s]he is okay for light duty."[44]

---

[42]     Rec. Doc. 7-1 at 498.

[43]     Rec. Doc. 7-1 at 449.

[44]     Rec. Doc. 7-1 at 482.

On June 8, 2010, Ms. Arceneaux consulted with Dr. Robert D. Franklin concerning injuries sustained in a motor vehicle accident of May 12, 2010.[45]  She told Dr. Franklin that she had fully recovered from the motor vehicle accident of October 2009 before the most recent accident occurred.  She also said she was receiving pain management from Dr. Blanda for her chronic low back and that her pain was constant and unbearable.  Dr. Franklin diagnosed her with cervical and lumbar strains.  On June 10, 2010, Ms. Arceneaux underwent cervical and lumbar MRIs.[46]

On September 30, 2010, Ms. Arceneaux went back to visit Dr. Blanda,[47] complaining of constant neck and back pain.  She told him she had been in a motor vehicle accident on May 12, 2010, in which the air bags deployed, and her attorney sent her to Dr. Robert Franklin, who ordered cervical and lumbar MRIs.  She was reportedly told that she had two bulging disks in her neck, two in her back, and arthritis in her lumbar spine.  At this visit, Ms. Arceneaux rated her neck pain as a six on a scale of one to ten and complained of pain and numbness in both arms.  She complained of aching, burning pain in her mid lower back, which she rated an eight.  She reported radiating pain into both legs with pins and needles sensations in both

---

[45]     Rec. Doc. 7-1 at 489-490.

[46]     Rec. Doc. 7-1 at 471, 472.

[47]     Rec. Doc. 7-1 at 448-451.

feet.  Dr. Blanda took x-rays, which revealed straightening of the cervical spine and marked instability at L4-5.  He prescribed pain medication, recommended physical therapy, and ordered further testing.  Ms. Arceneaux again followed-up with Dr. Blanda on October 26, 2010.

### ASSIGNMENT OF ERRORS

At issue in this appeal is the ALJ's decision that Ms. Arceneaux was disabled from May 18, 2006 through October 13, 2008.  Ms. Arceneaux contends that there is no medical evidence in the record supporting the ALJ's conclusion that she was able to resume sedentary work activity on October 14, 2008.  She also argues that the ALJ failed to satisfy the burden of establishing that she could, as of that date, perform sedentary work because she has both exertional and nonexertional impairments but no vocational expert testified at the hearing.

### STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper

legal standards were applied in reaching the decision.[48]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[49]  Substantial evidence is more than a mere scintilla and less than a preponderance.[50]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[51]  Finding substantial evidence requires scrutiny of the entire record as a whole.[52]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[53]

## DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[54]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically

---

[48]     *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[49]     *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[50]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[51]     *Boyd v. Apfel,* 239 F.3d at 704.

[52]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[53]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[54]     *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[55]   Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[56]

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional

---

[55]     42 U.S.C. § 423(d)(1)(A).

[56]     20 C.F.R. § 404.1572(a)-(b).

-13-

capacity must be considered to determine if the claimant can perform any other work at step five.[57]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[58] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[59]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[60]

The claimant bears the burden of proof on the first four steps.[61]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[62]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by

---

[57]     *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f). See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[58]     20 C.F.R. § 404.1520(a)(4).

[59]     20 C.F.R. § 404.1545(a)(1).

[60]     20 C.F.R. § 404.1520(e).

[61]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[62]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

expert vocational testimony, or by other similar evidence.[63]   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[64]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[65]

In this case, the Commissioner found, at step one, that Ms. Arceneaux did not engage in substantial gainful activity between May 18, 2006 and October 13, 2008.[66] That finding is supported by evidence in the record.

At step two, the ALJ found that Ms. Arceneaux has the following severe impairments:  L4-5 bilateral stenosis, central disc herniation at L4-5, and disc bulge at L5-S1 without extrusion.[67]  This is also supported by evidence in the record. Notably, the ALJ did not include Ms. Arceneaux's chronic back pain in the list of severe impairments, implicitly finding that her pain is not a severe impairment.  Ms. Arceneaux does not contend that the ALJ erred in failing to find that her pain is a severe impairment or that her pain is disabling.

---

[63]     *Fraga v. Bowen*, 810 F.2d at 1304.

[64]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[65]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[66]     Rec. Doc. 7-1 at 18.

[67]     Rec. Doc. 7-1 at 18.

At step three, the ALJ found that Ms. Arceneaux does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments.[68]  Ms. Arceneaux does not contend that this finding was erroneous.

The ALJ then found that, from May 18, 2006 through October 13, 2008, Ms. Arceneaux had the residual functional capacity to perform less than the full range of unskilled, sedentary work as defined in 20 C.F.R. § 416.967(a).[69]  The ALJ made three statements in support of that conclusion.  First, he said that he found Ms. Arceneaux's statements regarding the limiting effects of her symptoms credible with regard to that time frame.  Second, he noted that a state agency physician opined that Ms. Arceneaux could perform sedentary work.  Third, he found that "the claimant underwent back surgery and was unable to perform any work on a regular and continuing basis during this time frame."[70]

The ALJ then proceeded to step four, where he found that Ms. Arceneaux is unable to perform any past relevant work.[71]

---

[68]     Rec. Doc. 7-1 at 19.

[69]     Rec. Doc. 7-1 at 19.

[70]     Rec. Doc. 7-1 at 19.

[71]     Rec. Doc. 7-1 at 19.

At step five, the ALJ found that there were no jobs, existing in significant numbers in the national economy, that Ms. Arceneaux could perform during the stated time frame.[72]  Therefore, the ALJ found Ms. Arceneaux disabled from May 18, 2006 through October 13, 2008.[73]

Ms. Arceneaux argues that the ALJ erred in two ways.

### A.  THE ALJ DID NOT ERR IN FAILING TO RELY ON A VOCATIONAL EXPERT

Ms. Arceneaux contends that the ALJ erred in failing to elicit testimony from a vocational expert at the hearing.  The use of a vocational expert is discretionary.[74]  If the claimant suffers from nonexertional impairments, or a combination of exertional and nonexertional impairments that significantly affect her residual functional capacity, however, the Commissioner must rely on a vocational expert to establish that suitable jobs exist in the economy.[75]  Ms. Arceneaux's primary

---

[72]    Rec. Doc. 7-1 at 19.

[73]    Rec. Doc. 7-3 at 18.

[74]    *Sarabia v. Barnhart*, 133 Fed. App'x 140, 141 (5th Cir. 2005), citing 20 C.F.R. § 404.1566(e).

[75]    *Newton v. Apfel*, 209 F.3d at 458; *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000).

complaint is pain, and pain can be a nonexertional impairment.[76]  Nonexertional limitations affect a claimant's ability to meet the demands of jobs other than strength demands.[77]  Pain may be a nonexertional factor that limits the range of jobs a claimant can perform, but there should be clinical or laboratory diagnostic studies showing the existence of a medical impairment which could reasonably be expected to produce the alleged pain alleged.[78]  In this case, Ms. Arceneaux does have a severe condition that can cause pain.  But pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[79]  Mild or moderate pain is not disabling.  If a claimant suffers from a significant nonexertional limitation, the ALJ must rely on a vocational expert to establish that jobs exist in the economy.[80]

In this case, the ALJ found that Ms. Arceneaux's pain is a less than severe impairment.  The ALJ's decision on the severity of pain is entitled to considerable

---

[76]     *Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).

[77]     20 C.F.R. § 416.969a.

[78]     *Selders v. Sullivan*, 914 F.2d at 618.

[79]     *Selders v. Sullivan*, 914 F.2d at 618-19.

[80]     *Newton v. Apfel*, 209 F.3d at 458.

judicial deference.[81]   Accordingly, the ALJ was not required to consult with a vocational expert.

The ALJ's decision indicates that William M. Stampley, Jr., a vocational expert, appeared at the hearing.[82]   Mr. Stampley did not testify at the hearing, however, and the ALJ's decision does not rest upon any opinions that Mr. Stampley might have had.  Still, Ms. Arceneaux does not claim that the ALJ erred in finding her pain not severe nor does she claim that her pain is so severe as to be disabling. Therefore, the ALJ did not err in failing to rely upon the opinions of a vocational expert in reaching his decision that she was disabled only during a particular time period.

## B.   THERE IS NO EVIDENCE SUPPORTING THE ENDING DATE OF THE CLOSED PERIOD OF DISABILITY

Ms. Arceneaux's second argument is that the ALJ's decision is erroneous because it is not supported by substantial evidence.  To the extent that the ALJ found that Ms. Arceneaux's disability ended on October 14, 2008, the undersigned agrees.

---

[81]     *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987).

[82]     Rec. Doc. 7-1 at 15.

The evidence is undisputed that Ms. Arceneaux was injured in a workplace accident on May 18, 2006.  The ALJ found her complaints credible for the time period between May 18, 2006 and October 13, 2008, but he also found that she was capable of performing sedentary work on and after October 14, 2008.  The undersigned can find no evidentiary support for that conclusion.  Neither the plaintiff nor the Commissioner has identified anything that occurred on or near October 13, 2008 to change Ms. Arceneaux's status.  The undersigned has carefully reviewed the record and has found nothing correlated to that date that is significant to Ms. Arceneaux's symptoms, treatment, or disability.

The ALJ seems to have been persuaded by a few things in making his decision.  First, he points to the agency physician's functional analysis that found Ms. Arceneaux capable of sedentary work.[83]  But that opinion was issued on November 27, 2007, before Ms. Arceneaux had undergone spinal surgery.  Furthermore, that opinion has no correlation to the date of October 13, 2008.  Second, the ALJ points to an MRI performed in August 2008 that showed no recurrent disc herniation or stenosis.[84]  The undersigned is unable to located an August 2008 MRI in the record.  There is, however, an MRI of the lumbar spine dated July 31, 2008 that found no

---

[83]     Rec. Doc. 7-1 at 20.

[84]     Rec. Doc. 7-1 at 20.

residual recurrent disc herniation and no central canal or foraminal stenosis.  While this may be the test result that the ALJ was referring to, there is no correlation between that MRI result and the date of October 13, 2008.  Third, the ALJ notes that Dr. Blanda's examination of Ms. Arceneaux in May 2008 showed that her gait was stable and her leg strength was good.[85]   Although Dr. Blanda did reach those conclusions in May 2008, there again is no correlation between those clinical findings and the ALJ's opinion that Ms. Arceneaux's disability ended on October 13, 2008.

On October 13, 2008, Dr. Blanda was still treating Ms. Arceneaux for the injury she sustained in May 2006 and in connection with the surgery he performed in December 2007.  On October 23, 2009, Dr. Blanda released Ms. Arceneaux to light duty activities.  He treated her for the last time with regard to the original injury and surgery on December 3, 2009.

There is no medical evidence in the record supporting the ALJ's finding that Ms. Arceneaux was capable of performing sedentary work as of October 14, 2008.  Accordingly, the undersigned recommends that this matter be remanded for the purpose of reevaluating the ending date for Ms. Arceneaux's period of disability.

---

[85]     Rec. Doc. 7-1 at 20.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Ms. Arceneaux became disabled on May 18, 2006 is supported by substantial evidence, but also finds that the Commissioner's ruling that Ms. Arceneaux's disability ended on October 13, 2008 because she was capable of performing sedentary work as of October 14, 2008 is not supported by substantial evidence.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further consideration in accordance with the foregoing discussion. In particular, undersigned recommends that the ruling be affirmed with regard to the starting date of the period of disability, but reversed as to the ending date, and remanded for the purpose of determining an appropriate ending date for the period of disability that began on May 18, 2006.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 23rd day of April 2012.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE